IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| STEPHEN WINTON, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| LOWE'S HOME CENTERS, LLC | § | CIVIL ACTION NO.: _____ |
| | § | |
| *Defendant.* | § | |
| | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Stephen Winton ("Plaintiff" or "Winton"), complains of Defendant Lowe's Home Centers, LLC, ("Defendant" or "Lowe's"). For causes of action Plaintiff shows the Court as follows:

### I.

### INTRODUCTION

1.01    Defendant wrongfully demoted Plaintiff from his job in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. '2601, et seq. (the "FMLA").and discriminated and retaliated against Plaintiff, for asserting his rights under the FMLA , as well as interfered with his rights.

### II.

### PARTIES

2.01    Stephen Winton is an individual who is a citizen of the State of Texas.  Plaintiff can be contacted in care of his undersigned counsel.

2.02    Defendant Lowe's Home Centers, LLC ("Defendant" or "Lowe's") is a foreign for profit corporation which is operating in Texas and can be served through its agent, Corporation Service Company dba CSC-Lawyers Incorporating Service Company, 211 7th Street, Austin, Texas 78701-3218.

### III.

### JURISDICTION AND VENUE

3.01    Pursuant to 28 U.S.C. §1331, jurisdiction lies in the United States District Court for the Northern District of Texas, as this action involves a question of the application of federal law, including the Family and Medical Leave Act of 1993 (the "FMLA").

3.02    Venue for Plaintiff's causes of action stated herein lies in the Eastern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. §1391.

3.03    Venue is proper as Plaintiff lives in this district, the events took place in this judicial district, and the Defendant does business in this judicial district.

### IV.

### FACTUAL ALLEGATIONS

4.01    Plaintiff was hired by Defendant in April 2020 as Assistant Store Manager with base pay of $70,010, with 15% of salary as bonus potential and $5,000 stock options.

4.02    Plaintiff trained in several stores and in October 2020, Plaintiff's job title was changed to Bench Store Manager retroactive to April 2020 hire date.    The reason given was a mistake at hire as Plaintiff was supposed to be hired as bench store manager to start with. Plaintiff's

bonus for mid-year was corrected to store manager level.

4.03   In March 2021, Plaintiff's pay was adjusted to store manager pay due to the fact Plaintiff was being paid below starting pay for a store manager bench position.

4.04   In Feb 2021, Plaintiff was made to apply for Marshall, Texas Store Manager due to the fact that Plaintiff was a Bench Store Manager for nearly a year.

4.05   In March 2021 Plaintiff's corrected pay rate adjustment of $102,638 took effect.

4.06   On 4/12/2021, Plaintiff started as Store Manager in #1762 Marshall, Texas. Nick Chamberlain was the District Manager and Plaintiff's immediate supervisor. No pay change. However, Plaintiff received $20,000 in Restricted Stock Awards and year-end bonus.

4.07   In September 2021, Plaintiff was given a Meets Expectation mid-year performance review by Nick and a mid-year bonus.

4.08   In March 2022, annual performance review by Nick was Meets Expectations with comments saying Plaintiff had a good first year in Marshall and corrected several key issues. Plaintiff received a 3% raise, $20,000 Restricted Stock Awards, and Plaintiff's final year-end bonus of approximately $80,000 for fiscal year 2021 performance. Plaintiff's new pay rate was $105,718.

4.09   September 2022, mid-year performance review was Meets Expectations by Nick and mid-year bonus. Very positive comments from Nick on Plaintiff's performance.

4.10   In 2023 the store visit was deemed Green, which is the best.

4.11   On March 14, 2023, Plaintiff had his Yearly Performance Review which was Meets Expectations with many positive comments noted from Nick and 3.5% raise was indicated to be higher than 3% based on rewarding Plaintiff's performance in 2022. New pay was $109,419 with $20,000 in Restricted Stock Awards and year-end bonus of $83,701 for all of fiscal year 2022

performance.

4.12  On March 30, 2023, Nick visited the store and was very disrespectful during his visit and after push back, he claimed store was Red or below standard even though his notes did not match his comments.

4.13  On March 31, 2023, Plaintiff received an email from Nick about his visit the day before. No indication of being an underperforming store manager or that all store managers were held accountable after 1 Red walk. Since he shut Plaintiff down the day before, Plaintiff could not discuss any support needed or get his guidance on how Plaintiff could do better.

4.14  On April 3, 2023, Plaintiff called Scott Moore informing him of Nick's negative response via phone call about Plaintiff's feedback and making Scott aware of Plaintiff's wife's health issue with respect to which he informed Plaintiff to explore an FMLA option.

4.15  Plaintiff took FMLA between April 4, 2023 through May 5, 2023.

4.16  On May 4, 2023 Plaintiff called Scott Moore at 4:30pm.  Plaintiff called Scott with an update on his and his wife's health. Plaintiff told Scott that he truly appreciated Lowe's granting the FMLA leave for Plaintiff to heal from his serious medical issue. Plaintiff's diagnosis ended up showing that he was not well for a while before he actually began leave. Certainly, the pressures of balancing work and spouse's health took its toll on Plaintiff.  Plaintiff had shared his concerns how Nick was the cause and how Plaintiff was doing personally when they had talked the previous Thursday.

4.17  On May 6, 2023 Plaintiff returned from FMLA to a store that was worse than before he left for FMLA, not to mention the morale of the associates.

4.18  On May 8, 2023, Plaintiff and Nick had a discussion regarding the store condition. There was a 3:30 p.m. teams call on Sylvia Allen's account.  Plaintiff did not receive a "welcome

back" text when Nick added to the Monday text thread nor did he acknowledge Plaintiff's attendance on the 1:00 p.m. Monday Alignment call. It was this call where Nick welcomed Plaintiff back.

4.19   On May 16, 2023 Nick and Plaintiff had a conversation in the training room discussing business. It was this discussion where he detailed Q1 performance including store performance while Plaintiff was on protected leave. He asked for Plaintiff's level of commitment going forward. Plaintiff could see the path he was going down. Plaintiff indicated that he needed a couple days and Plaintiff asked if he would approve of Plaintiff stepping down to hourly DS, so Plaintiff could properly decide the path forward.

4.20   Nick asked for Plaintiff response to his feedback they discussed, and Plaintiff said that replacing 9 or the 11 DS's and 2 ASM's since 2/1/23 created opportunity due to how new many were with Lowe's and promoting so many in such a short period of time would cause a temporary setback in the business as they addressed training with the leadership.

4.21   Plaintiff asked to step down since Nick held Plaintiff responsible for performance of the store during Plaintiff's protected leave. He made it clear what his intentions were, should Plaintiff have stayed on as store manager under him. Plaintiff asked for the way out and said what he needed to say during this meeting to stay employed and retain his Stock Awards.

4.22   On May 19, 2023, Plaintiff called Nick and he was trying to get Plaintiff off the phone when Plaintiff asked about stepping down.  Nick indicated that Plaintiff was an "underperforming" store manager currently and that Plaintiff needed to get the store on track before any final decision on stepping down could be allowed. Being that his next visit was the determining factor Plaintiff heard from him that he considered Plaintiff underperforming.

4.23   Plaintiff was a little confused at this point. Before going on FMLA leave, there was

no indication that Plaintiff was an underperforming store manager. Upon returning, Plaintiff was told that he was now underperforming. Plaintiff has been courageous in sharing the cause of his mental health issue due to Nick being a toxic manager, and Jenny's, Plaintiff's wife, chronic health condition.

    4.24    On May 23, 2023 Plaintiff informed Bret Romero, Region HR, in a phone call about retaliation after returning from FMLA. He did not follow through.

    4.25    On May 30, 2023, Nick called Plaintiff to inform him that Plaintiff would be allowed to step down and gave Plaintiff until June 2, 2023 as store manager.

    4.26    On June 2, 2023, Plaintiff filed a complaint with Lowe's Compliance regarding Nick's retaliation against Plaintiff for taking FMLA.

    4.27    June 29, 2023, Plaintiff's complaint was closed without contacting any of the witnesses, Plaintiff included. Plaintiff notified Compliance about his concern with the lack of follow up and care in handling his case. Response from them was "Case Closed." Plaintiff was not provided any resolution as to if the case was substantiated or not. Plaintiff was only told many times that he was not to talk to anyone about this.

    4.28    While working at Plaintiff's new store, Nick came to visit and picked up 5-6 loose sockets in Plaintiff's department. Nick did not walk anywhere else in Plaintiff's department and said department was not ready (Red Dept). Carl Crockett, ASM, told Plaintiff a couple of days later that it did not matter what Plaintiff did, that Plaintiff would not survive.

    4.29    In July 2023 another store manager told Plaintiff that they heard the plan was to bump Plaintiff down and then get Plaintiff out of the company. This was all after Plaintiff filed the complaint with Lowe's.

## V.

## FIRST – FOURTH COUNTS

### FAMILY AND MEDICAL LEAVE ACT (FMLA) DISCRIMINATION, INTERFERENCE AND RETALIATION

5.01    The foregoing paragraphs in this Complaint are incorporated in this count by reference as fully as if set forth at length herein.

5.02    Plaintiff was an eligible employee under the FMLA.  Plaintiff had worked for Defendant for at least twelve (12) months and had worked at least 1,250 hours during the twelve (12) months prior to taking the leave.

5.03    Defendant was subject to the provisions of the FMLA. Defendant employed at least fifty (50) employees within a seventy-five (75) mile radius of Plaintiff's work site for twenty (20) or more work weeks in the prior or current calendar year.

5.04    At the time of the discharge, Plaintiff had suffered from one or more "serious health conditions" as defined by the FMLA.  29 U.S.C. 2611 (11).  In particular, Plaintiff was suffering with severe depression.  This was also a "serious health condition" because it resulted in a period of incapacity, which required treatment by physicians and prescription medications.  Plaintiff is under the continuing care of his physicians for treatment for this and related conditions.

5.05    Defendant interfered with Plaintiff in the exercise of his FMLA rights by retaliating against Plaintiff after returning back to his employment after FMLA leave.  Plaintiff made good faith efforts to submit all medical certifications for his FMLA leave.

5.06    The FMLA's interference provision makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any substantive FMLA right. 29 U.S.C. § 2615(a)(1); *see also Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004); *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). Notably, a claim

that an employee was retaliated against for taking FMLA leave is cognizable under *both* an interference or prescriptive claim under 29 U.S.C. §2615(a)(1), or under a retaliation or proscriptive claim under §2615(2). *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 n.2 (6th Cir. Ohio 2007).

5.07 As a result of being retaliated against, Plaintiff has suffered damages in the form of lost wages and benefits. Plaintiff is entitled to back pay, plus interest on that amount, and front pay to compensate him for that loss. 29 U.S.C § 2617(a)(1)(A)(i)-(ii).

5.08 The aforementioned acts were and are a willful violation of the FMLA, and entitle Plaintiff to recover damages as provided by 29 U.S.C. 2617, including liquidated damages. Plaintiff further seeks reinstatement to his position or a comparable position with reinstatement of benefits and seniority time.

5.09 As a result of Defendant's actions, Plaintiff has found it necessary to return the services of the undersigned attorneys, for which Plaintiff seeks further relief. 29 U.S.C § 2617(a)(3).

## VI.

## JURY DEMAND

6.01 Plaintiff demands trial by jury on all issues raised by this Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have the following relief against Defendant:

1. Judgment for back and front pay and all past and future lost benefits;

2. Judgment for actual damages in the amount of past and future lost earnings and benefits, and damages to past and future earnings capacity;

3. Compensatory damages for the humiliation, damage to reputation, mental and emotional distress, and pain and suffering Plaintiff has experienced and endured as a result of the discriminatory and retaliatory actions of Defendant;

4. Damages for past and future mental anguish and emotional distress and damages to reputation;

5. Prejudgment and postjudgment interest at the maximum legal rate;

6. Preliminary and permanent injunctive relief;

7. Attorney's fees;

8. Expert's fees;

9. All costs of court; and

10. Such other and further relief to which Plaintiff may be justly entitled.

Dated: September 22, 2023

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: *W. D. Masterson*
W.D. MASTERSON
State Bar No. 13184000
3141 Hood Street, Suite 500
Dallas, TX  75219
(214) 969-9099 - Telephone
(214) 953-0133 - Fax
wdm@kilgorelaw.com

**ATTORNEYS FOR PLAINTIFF STEPHEN WINTON**